IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HEIDI GROSSMAN-LEPP, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTH SALT LAKE POLICE DEPARTMENT, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO AMEND, GRANTING DEFENDANTS' MOTIONS TO DISMISS IN PART, DENYING PLAINTIFFS' NOTICE AND MOTION REGARDING NON-OPPOSITION ORDER AND SUBSTITUTION OF DEFENDANT AS MOOT<br><br>Case No. 2:25-cv-00675-TS-DBP<br><br>Judge Ted Stewart<br>Magistrate Judge Dustin B. Pead |

This matter is before the Court on Plaintiffs' Motion for Leave to File First Amended Complaint,[1] Defendants Motions to Dismiss,[2] and Plaintiffs' Notice and Motion Regarding Non-Opposition Order and Substitution of Defendant.[3] For the reasons discussed below, the Court will grant Plaintiffs' Motion for Leave to File First Amended Complaint, grant Defendants' Motions to Dismiss in part, and deny Plaintiffs' Motion Regarding Non-Opposition as moot. Because the Court finds that the *Younger* abstention doctrine applies, the Court will stay the case.

---

[1] Docket No. 34.

[2] Docket Nos. 22, 24.

[3] Docket No. 40.

I. BACKGROUND

Plaintiffs Reverend Holly Lepp, Reverend Aaron Rev. O'Connor, and Reverend Joshua Roberts sue Defendants South Salt Lake Police Department, Utah State Bureau of Investigation, Utah Attorney General's Office, Utah Department of Agriculture and Food—Cannabis Program, Salt Lake County District Attorney's Office, Jack Carruth, Sean D. Reyes, Sim Gill, Thomas Burnham, Detective C. Felix, Gary Perea, and Does 1–99 for claims related to law enforcement searches of the Sugarleaf Church's Salt City Sanctuary and Blackhouse Sanctuary, and the seizure of items found therein.

Sugarleaf Church is a non-denominational, religious institution that welcomes members of all faiths and backgrounds.[4] The Church states that it promotes free thought, diversity of beliefs, communicating personal spiritual enlightenments, community interaction and education, guided meditation, sound healing, elevated yoga, prayer circles, and the cultivation of organic Sacraments, including the use of cannabis and psilocybin mushrooms.[5] The Complaint states that Sugarleaf Church ensures that all Sacraments consumed by its members are cultivated, prepared, and blessed in accordance with sacred tradition, under the supervision of Elders.[6]

Reverend Lepp is the Sugar Leaf Church's Founder and National Director.[7] Reverend O'Connor is an ordained minister and long-standing Elder of Sugarleaf Church. He oversees Sugarleaf Branches, including the Blackhouse Sanctuary and Salt City Sanctuary.[8] Reverend Roberts is an ordained minister, registered volunteer, and member of the Church who assists in

---

[4] Docket No. 1 § 4, ¶ 17.

[5] *Id.* ¶ 18.

[6] *Id.* ¶ 31.

[7] *Id.* § 3, ¶ 5.

[8] *Id.* ¶ 6.

ceremonies, provides member assistance, spiritual guidance, and safeguarding administration of Sacraments at Blackhouse Sanctuary.[9]

On August 5, 2025, the South Salt Lake Police Department executed a search of the Blackhouse Sanctuary and Salt City Sanctuary pursuant to two search warrants.[10] The warrants included sworn affidavits from law enforcement officers who conducted undercover purchases of controlled substances at the Blackhouse and Salt City Sanctuaries.[11] Pursuant to the warrant, law enforcement seized marijuana flowers, marijuana joints, psilocybin mushrooms, mushroom gummies, edibles with THC, and rolling papers at the Salt City Sanctuary.[12] They further seized raw marijuana, psilocybin mushrooms, THC vapes, cookies, gummies, candies, syrups, and psilocybin cookies, gummies, and similar products from the Blackhouse Sanctuary premises. An additional warrant was applied for and executed that included flavored vapes, which were later seized at Blackhouse Sanctuary.[13] Plaintiffs allege that officers mocked their religious affiliation and took these Sacraments and other items such as cash donations, checkbooks, and rosters.[14]

At the Salt City Sanctuary, officers detained and arrested Reverend Roberts.[15] He was later booked into the Salt Lake County Jail for failure to identify.[16] Reverend O'Connor was not present at the time of the searches but Defendants allege that he is the owner of both the Salt City

---

[9] *Id.* ¶ 7.

[10] *Id.* ¶ 36.

[11] Docket No. 24, at 2.

[12] *Id.*

[13] *Id.*

[14] Docket No. 1 ¶¶ 43, 56.

[15] *Id.* ¶ 46.

[16] *Id.*; Docket No. 24, at 3.

and Blackhouse Sanctuaries.[17] On September 8, 2025, Salt Lake County filed criminal informations against Reverend Roberts and Reverend O'Connor in Third District Court in Utah for charges related to the search and seizure, including charges for Possession with Intent to Distribute a Controlled Substance.

Reverend Lepp was not present at the searches and has not been charged criminally.[18] However, she was added as an indispensable party to the civil forfeiture case filed against Reverend O'Connor and Blackhouse Sanctury that seeks forfeiture of $10,938.00 seized from the Sanctuary during the search.

Plaintiffs assert that these searches were conducted in violation of the Religious Freedom Restoration Act ("RFRA"), and the First, Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Plaintiffs also assert claims for criminal violations of 18 U.S.C. §§ 242, 247, as well as Racketeer Influenced Corrupt Organizations ("RICO") claims pursuant to 18 U.S.C. §§ 1961–68, and a RICO Conspiracy claim under 18 U.S.C. § 1962(d). Plaintiffs seek declaratory judgment, a permanent injunction, mandatory religious sensitivity training, the return of the seized property, dismissal of charges, a discovery order; compensatory damages; punitive damages against the individual Defendants; referrals for criminal investigation; costs and attorneys' fees, and any further relief the Court deems just, equitable, and proper.[19]

On August 12, 2025, Plaintiffs filed their initial Complaint and a Motion for Ex Parte Emergency Temporary Restraining Order.[20] The Court denied the Motion in part, and required

---

[17] Docket No. 24, at 3.

[18] *Id.*

[19] *Id.* at 54–60.

[20] Docket Nos. 1, 3.

Plaintiffs to serve Defendants and follow the ordinary briefing schedule under the local rules.[21] Thereafter, Defendants Thomas Burnham, Gary Parea, Sean D. Reyes, the Utah Attorney General's Office, the Utah Department of Agriculture and Food Cannabis Program, and the Utah Bureau of Investigations ("SBI") (collectively, "State Defendants") filed a Motion to Dismiss and Stay.[22] Defendants Sim Gill, and the Salt Lake County District Attorney's Office (collectively, "County Defendants") filed a Motion to take Judicial Notice of the business records tied to Blackhouse Sanctuary[23] and a Motion to Dismiss.[24]

Thereafter, Plaintiffs filed their First Amended Complaint,[25] but failed to seek the appropriate stipulation or leave pursuant to Federal Rule of Civil Procedure 15. The Court ordered Plaintiffs to either file a motion to seek leave or file a stipulation from Defendants.[26] Plaintiffs filed a Motion for Leave to File First Amended Complaint.[27] Thereafter, Plaintiffs filed a Notice and Motion Regarding Non-Opposition Order and Substitution of Defendant asking the Court to grant the Motion for Leave to Amend.[28] The Court will first address Plaintiffs' Motions and then turn to Defendants' Motions to Dismiss.

---

[21] Docket No. 9.
[22] Docket No. 22.
[23] Docket No. 23.
[24] Docket No. 24.
[25] Docket No. 28.
[26] Docket No. 32.
[27] Docket No. 34.
[28] Docket No. 40.

II. DISCUSSION

A. Motion for Leave to Amend

Plaintiffs seek leave to amend their original Complaint to include a claim under the Utah RFRA, to add Defendants Tom Smart and Derek Brown, and to include updates to the case since they originally filed it. Defendants object arguing that amendment is futile in part because abstention is required under *Younger* as argued in their Motions to Dismiss.

Federal Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." An amendment is futile when "the complaint, as amended, would be subject to dismissal."[29] "[I]t is within a court's discretion to decline to engage in a futility analysis in the context of a motion to amend if the court determines the futility argument would be more properly addressed in dispositive motions."[30] The Court will exercise this discretion and decline to analyze futility, and will instead address the arguments below as part of the Motions to Dismiss. The Court further finds that there was no undue delay, bad faith or dilatory motive, repeated failure to cure prior deficiencies, or undue prejudice to the opposing party based on the

---

[29] *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal quotation marks and citation omitted).

[30] *Simple Prods. Corp. v. Chia-Ling Huang*, No 2:19-cv-00317-DBB-DAO, 2021 WL 2210308, at *4 (D. Utah June 1, 2021). *See also Lambe v. Sundance Mtn. Resort*, No. 2:17-cv-00011-JNP, 2018 WL 4558413, at *3 (D. Utah Sept. 21, 2018) (declining to engage in a futility analysis when "the viability of [the] claim is more appropriately addressed in the context of a dispositive motion as opposed to a motion for amendment"); *JDK, LLC v. Hodge,* No. 15-cv-00494-NYW, 2015 WL 5766466, at *2 (D. Colo. Oct. 2, 2015) ("With a mind to the interests of judicial economy, this court exercises its discretion in declining to engage in a detailed futility analysis where [d]efendants' arguments are better suited for consideration in the context of their [m]otions to [d]ismiss.").

proposed amendment.[31] Accordingly, the Court will grant Plaintiff's Motion for Leave to Amend. Plaintiff's First Amended Complaint is the operative Complaint.[32]

Generally, "[a]n amended complaint supersedes the original complaint and renders the original complaint of no legal effect."[33] However,

> Defendants [are not] required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.[34]

As discussed below, Plaintiffs' First Amended Complaint contains the same defects as in the originally filed Complaint, specifically under *Younger*. Accordingly, the Court will not deny Defendants' Motions to Dismiss as moot, but will consider the Motions as they apply to the Amended Complaint below. Additionally, the Court will deny Plaintiffs' Notice and Motion as moot as the Court has now granted Plaintiffs' Motion for Leave to Amend.

B. Motions to Dismiss

Both County Defendants and State Defendants filed Motions to Dismiss largely making the same arguments, accordingly, the Court will discuss them in conjunction below.

Defendants argue that the *Younger* abstention doctrine applies because there are underlying state criminal cases against Reverends O'Connor and Roberts. The *Younger* doctrine

---

[31] Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Frank v. U.S. W. Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993).

[32] Docket No. 28.

[33] *Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005); *Howeth v. Aramark Corp.*, No. 2:10-CV-221-TS, 2011 WL 1428087, at *2 (D. Utah Apr. 13, 2011) (finding a motion to dismiss is moot when a complaint has been amended).

[34] *Bird v. Easton*, 859 F. App'x 299, 301 (10th Cir. 2021) (quoting 6 Charles Alan Wright *et al.*, Federal Practice & Procedure § 1476 (3d ed. 2021)).

"is designed to permit state courts to try state cases free from interference by federal courts particularly where the party to the federal case may fully litigate their claim before the state court"[35]

The Supreme Court has established three factors for the district court's determination as to whether abstention is required under *Younger*:

> (1) there is an ongoing state criminal, civil or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.[36]

"Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain."[37]

Plaintiffs do not argue that the *Younger* requirements are not satisfied, but instead that the doctrine does not apply because Defendants acted in bad faith and with intent to harass. The Court will first analyze the *Younger* requirements before turning to Plaintiffs' arguments regarding the bad faith exception.

Turning to the first requirement under *Younger*, there are ongoing state criminal proceedings in Utah state court pending against Reverend O'Connor and Reverend Roberts. Although the criminal cases were filed after the present case, the Supreme Court has held that "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in

---

[35] *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (internal quotation marks and citation omitted).

[36] *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) (internal quotation marks and citation omitted).

[37] *Id.*

federal court, the principles of *Younger v. Harris* should apply in full force."[38] The Supreme Court further held that a federal court's denial of a request for a temporary restraining order does not prevent abstention.[39]

This case was filed on August 12, 2025, and the state criminal cases were filed thereafter, on September 5, 2025.[40] The search and seizure (and Reverend Roberts' arrest) occurred on August 5, 2025. Prior to the criminal cases being filed, the Court denied Plaintiffs' Ex Parte Emergency Motion for a Temporary Restraining Order in part. Accordingly, there were not any proceedings of substance on the merits in the present case prior to the state criminal cases being filed. Furthermore, many courts have concluded that for *Younger* purposes, a state criminal proceeding begins with the execution of a search warrant.[41] The Court finds the first requirement under *Younger* is satisfied.

Next, turning to the second *Younger* requirement, Plaintiffs do not argue that they are unable to raise the alleged constitutional violations in state court and the Court cannot foresee any barriers to do so.[42] As to the third requirement, "[f]or purposes of *Younger*, state criminal proceedings are viewed as 'a traditional area of state concern.'"[43] Accordingly, the Court finds

---

[38] *Hicks*, 422 U.S. at 349.

[39] *Id.* at 337.

[40] Docket No. 28 ¶ 58.

[41] *See Kingston v. Utah Cnty.*, No. 97-4000, 1998 WL 614462, at *4 (10th Cir. 1998) (unpublished table decision); *Pawelsky v. Cnty. of Nassau*, 684 F. Supp. 3d 73, 82–83 (E.D.N.Y. 2023); *Nick v. Abrams*, 717 F. Supp. 1053, 1056 (S.D.N.Y. 1989).

[42] *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) ("Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims") (internal quotation marks and citation omitted).

[43] *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (quoting *Seneca-Cayuga Tribe of Okla. v. Okla. ex rel. Thompson*, 874 F.2d 709, 713 (10th Cir. 1989)).

that the three *Younger* requirements are met as to Defendants Reverend O'Connor and Reverend Roberts.

The Court also finds that there is an ongoing quasi-criminal proceeding involving Reverend Lepp in state court. On October 17, 2025, Salt Lake County filed a Complaint for Forfeiture against Reverend O'Connor and the Blackhouse Sanctuary. The state seeks forfeiture of $10,938.00 seized pursuant to Utah Code Ann. § 77-11a-201 from the Blackhouse Sanctuary during the search on August 5, 2025. On December 2, 2025, the state court granted a stipulated motion to join Reverend Lepp as an indispensable party in the case.[44]

The Supreme Court has extended the *Younger* abstention doctrine beyond criminal prosecutions to include "state civil proceedings that are akin to criminal prosecutions . . . or that implicate a State's interest in enforcing the orders and judgments of its courts."[45] In accordance with this extension, the Tenth Circuit has found that civil forfeiture proceedings initiated in Wyoming state court mandated abstention by the federal court.[46] In *Garcia v. Wyoming*, the state sought to forfeit property used or intended to be used in violation of the state controlled substances act.[47] The court concluded that the civil forfeiture provisions were in aid of Wyoming's criminal statutes and therefore, *Younger* prevented federal court intervention.[48] Other circuits have similarly concluded that *Younger* applies to civil forfeiture proceedings.[49]

---

[44] Docket No. 61.

[45] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (citation omitted).

[46] *Garcia v. Wyoming*, 587 F. App'x 464, 467 (10th Cir. 2014).

[47] *Id.*

[48] *Id.*

[49] *See Loch v. Watkins*, 337 F.3d 574, 579 (6th Cir. 2003) (finding that *Younger* abstention applied when there was an ongoing state forfeiture proceedings); *Postscript Enters., Inc. v. Peach*, 878 F.2d 1114, 1116 (8th Cir. 1989) (finding that *Younger* abstention applied when there were ongoing "quasi-criminal" forfeiture proceedings); *Fairfield Cmty. Clean Up*

The Court finds that there is an ongoing state proceeding involving Reverend Lepp. While the civil forfeiture case was not filed until October 2025, as discussed above, there were no proceedings of substance on the merits in the present case prior to the state court filing. Accordingly, the Court finds that the first *Younger* requirement is met. Next, the state proceedings provide an adequate forum to hear the claims as discussed above. Finally, the state's interest in the forfeiture proceedings is akin to its interests in its criminal law proceedings.[50] Therefore, the Court finds that abstention is required as to all the Plaintiffs' claims.

Therefore, "abstention is mandatory unless one of the three exceptions applies: the prosecution was '(1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any such other extraordinary circumstance creating a threat of irreparable injury both great and immediate.'"[51]

Plaintiffs argue that *Younger* abstention does not apply because Defendants commenced the state criminal proceedings in bad faith or to harass.[52]

"[I]n cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown,"[53] a plaintiff may overcome the presumption of

---

*Crew Inc. v. Hale*, 735 F. App'x 602, 605 (11th Cir. 2018) ("[T]he state-court civil forfeiture action is the type of action which the *Younger* abstention principles generally apply[.]").

[50] *Loch*, 337 F.3d at 579 ("We believe that Michigan's interest in its forfeiture laws is directly correlated with its interest in the enforcement of the criminal laws."); *Postscript Enters., Inc.*, 878 F.2d at 1116 ("The state's interest in . . . forfeiture proceedings is likely to be as great as its interest in its criminal law proceedings.").

[51] *Winn*, 945 F.3d at 1258–59 (quoting *Phelps v. Hamilton*, 59 F.3d 1058, 1063–64 (10th Cir. 1995)).

[52] Docket No. 29, at 8–9.

[53] *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).

abstention. To determine whether a prosecution is commenced in bad faith or to harass, the Tenth Circuit considers three factors: "(1) whether it was frivolous or undertaken with no reasonably objective hope of success; . . . (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; . . . and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through unjustified and oppressive use of multiple prosecutions."[54]

The Tenth Circuit further emphasized that "[t]hese factors are important because the cost, anxiety, and inconvenience of defending against a single prosecution brought in good faith is not enough to establish the 'great and immediate' threat of irreparable injury necessary to justify enjoining pending state proceedings."[55] Further, "[u]nder *Younger*, intervention cannot be predicated on mere allegations; rather, the federal plaintiff must *prove* bad faith harassment before intervention is warranted."[56]

Plaintiffs argue in their Opposition that the prosecutions here were undertaken in bad faith or to harass. At the crux of their argument is that Defendants acted in contempt of the Order in *Jensen v. Utah County*,[57] a case in which another court in this district issued an injunction under similar facts against Utah County and the Utah County Attorney, Jeffrey Gray, in part finding that *Younger* did not apply because the prosecutions were undertaken in bad faith. Plaintiffs also argue that "serial re-raids" compound this bad faith and harassment and violate the Double Jeopardy Clause.[58]

---

[54] *Phelps*, 59 F.3d at 1065 (citations omitted).

[55] *Id.*

[56] *Id.* at 1066.

[57] 767 F. Supp. 3d 1153 (D. Utah 2025).

[58] Docket No. 29, at 9.

In *Jensen*, the plaintiffs filed suit against Utah County and the County Attorney.[59] The plaintiffs sued the defendants under the First and Fourth Amendments to the Constitution, the Utah Constitution, and Utah's Religious Freedom Restoration Act ("RFRA").[60] The plaintiffs practice Singularism, a religion that uses psilocybin mushrooms in its religious ceremonies.[61] On November 11, 2024, Provo City police officers executed a warrant on Singularism's spiritual center and seized psilocybin used for religious ceremonies.[62] Thereafter, the plaintiffs filed suit in Utah state court and the defendants removed the action to federal court.[63] After the district court granted a preliminary injunction in favor of the plaintiffs, the government filed criminal charges against Mr. Jensen.[64] The defendants filed a motion to dismiss, alleging in part, that *Younger* applied.[65]

The court concluded that *Younger* did not apply, because by removing the case from state court to federal court, the defendants waived their *Younger* abstention defense.[66] The court further concluded that even if the defendants had not waived their *Younger* abstention defense, the bad faith and irreparable injury exceptions applied.[67] The court found that the factors

---

[59] The plaintiffs originally filed suit against officers employed by Provo City Police Department, but did not proceed on claims against those defendants. *Jensen*, 767 F. Supp. 3d at 1166 n.2.

[60] *Id.* at 1165–66.

[61] *Id.* at 1159.

[62] *Id.* at 1165.

[63] *Id.* at 1166.

[64] *Id.*

[65] No. 2:24-cv-00887, 2025 WL 2208257, at *9 (D. Utah Aug. 4, 2025).

[66] *Id.* at *10 ("When state defendants are in federal court only because of their own decision to remove the case from state court, it would be fundamentally unfair to permit them to argue that the federal court must abstain from hearing the case.") (internal quotation marks and citations omitted).

[67] *Id.* at *11.

weighed strongly in favor of finding the state prosecution was commenced in bad faith because the government filed its criminal charges after the court already had issued a preliminary injunction, suggesting it was trying to get a more favorable ruling with another court.[68] The court further held that "the prosecution [was] grounded in the government's refusal to recognize the sincerity of a religion that to it appears foreign, strange, or illogical."[69] The Court also stated that "in the context of the intrusive, offensive questioning from [the d]efendants' counsel during [the preliminary injunction hearing] and the vastly overbroad discovery requests, the court has no hesitation finding that the government pursued the prosecution primarily to harass [the plaintiffs] into ceasing their sincere religious practices."[70]

Plaintiffs argue that the preliminary injunction issued in *Jensen* barred Defendants from executing the search warrants at issue here, which they contend is evidence of bad faith. However, the injunction in *Jensen* was specifically directed to the parties involved in that particular case.

Further, Federal Rule of Civil Procedure 65(d)(2) states that an injunction order "binds only the following who receive actual notice of it by personal service or otherwise: [] the parties; [] the parties' officers, agents, servants, employees, and attorneys; and [] other persons who are in active concert or participation with anyone described . . . ." None of the parties in this case were a party in the *Jensen* case. Accordingly, Defendants here were not bound by the *Jensen* injunction.

---

[68] *Id.*

[69] *Id.*

[70] *Id.*

Plaintiffs also argue that binding federal directives demonstrate that Defendants acted in bad faith.[71] These directives discuss the importance of RFRA and religious freedom. However, they do not demonstrate that Defendants acted in bad faith or to harass.

In weighing the bad faith factors, the Court finds that the balance of the factors does not weigh in favor of finding that the state prosecutions were commenced in bad faith or to harass. The government filed its criminal charges shortly after the present case was filed and approximately one month after the search and seizure at the Blackhouse and Salt City Sanctuaries. The prosecution does not appear to be objectively frivolous or with no reasonably objective hope for success based upon the facts presented by both parties. Next, unlike in *Jensen*, there is no evidence that the state prosecution was brought in retaliation for Plaintiffs' exercise of constitutional rights. While Plaintiffs allege that Defendants "mocked" their religion during the search, the Court does not find this would prove bad faith or intent to harass, even taking the allegation as true. Furthermore, the facts under which the Court found bad faith and intent to harass in *Jensen* vastly differ from the facts here, including the underlying warrants, the timeline of the filings in this matter, and the statements and requests made by the defendants in *Jensen*.

As the State Defendants point out, because there is such a heavy burden required under the bad faith or harassment exception to *Younger*, courts rarely find that the bad faith or harassment exception applies.[72] Plaintiffs fail to meet that burden here and therefore, the Court finds that there is no exception barring abstention in this matter.

Because *Younger* abstention applies, the Court must determine whether to stay the claims or dismiss them. Under *Younger*, "claims for declaratory relief and injunctive relief are subject to

---

[71] Docket No. 29, at 3.

[72] Docket No. 42, at 8.

outright dismissal."[73] "The *Younger* doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state court proceeding."[74] "Notably, however, as to claims for money damages, the appropriate course is staying proceedings on the federal damages claim until the state proceeding is final."[75]

Here, Plaintiffs assert claims for declaratory, injunctive, and monetary relief. To the extent that each claim seeks declaratory and injunctive relief the Court will dismiss the claims. However, because Plaintiffs appear to seek monetary damages on each of their claims, the Court will stay the case as a whole.

### III. CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion for Leave to Amend Complaint (Docket No. 34) is GRANTED; It is further

ORDERED that State Defendants' Motion to Dismiss (Docket No. 22) is GRANTED IN PART; It is further

ORDERED that County Defendants' Motion to Dismiss (Docket No. 24) is GRANTED IN PART; It is further

ORDERED that Plaintiffs' Notice and Motion Regarding Non-Opposition Order and Substitution of Defendant (Docket No. 40) is MOOT; It is further

ORDERED that this matter is STAYED until the state court proceedings discussed herein are concluded. At such time, the stay may be lifted upon motion by any party.

---

[73] *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 523 (10th Cir. 2023) (citing *D.L. v. Unified Sch. Dist. No. 497,* 392 F.3d 1223, 1228 (10th Cir. 2004)).

[74] *Id.* (internal quotation marks and citation omitted).

[75] *Id.* (internal quotation marks and citation omitted).

DATED  January 16, 2026.

BY THE COURT:

_____
TED STEWART
United States District Judge